23-19-40 Dennis Speerly et al. versus General Motors LLC oral argument not to exceed 20 minutes per side. Mr. Godfrey for the defendant appellant. Good afternoon. Good afternoon may it please the court my name is Richard Godfrey represent General Motors I'd like to reserve five minutes of my time for if that's permissible. We're here on an appeal of 26 certified state classes involving 40 makes and models, 59 different state laws, seven different market segments fundamentally different, and we submit that there are three fundamental legal errors which require not just reversal but reversal with directions to the district court that on the basis of this record no class can be certified. Those three errors are quite simple but they're quite profound and this court needs to give guidance to the district courts of this circuit particularly since this circuit is becoming inundated with class actions of a particular type not just against the transportation industry but against other industries as well each of which implicates at least two of these three questions. Question number one what is the first legal error? The district court misdefined and misunderstands what a common question is under rule 23a. Error number two the district court misdefined, misapplied rule 23b3 and in the process reinstituted under the guise of a concept called culling or the merits the banned conditional certification that was taken out of the rule when the 2003 amendments was taken out of the rule. And then error number three the district court certified classes comprised of hundreds of thousands of people who got exactly what they bargained for who had not a single issue with their vehicles who've driven them billions of miles. There's an article 3 standing issue. There is no concrete injury in fact but more importantly or equally importantly that is traceable or caused by one of the two defects because one of the facts that is undisputed in this record the seemingly was not analyzed much less rigorously analyzed by the district court was the multiple causation. Transmission problems have multiple causes. Shutter has eight different causes established by this record unrelated to the automatic transmission fluid. House shift has ten different causes unrelated to the air purge problem with a valve. And as proven by the inspections by plaintiff's own counsel by plaintiff's own expert Mr. McVeigh he found three named plaintiffs where he couldn't find anything wrong with their transmissions. He found five plaintiffs where after the warranty repairs were done. Can I ask you a question about the standing the uninjured plaintiff question and I know your friends on the other side argue that in fact everyone was injured there's a benefit of the bargain theory but put that aside for a second just a housekeeping question I know the Supreme Court has taken up the article 3 issue they're probably going to decide at this term. In your supplemental brief you seem to argue that question more as a predominance question than as kind of a showstopper that the Chamber of Commerce argues it that way and I'm curious whether and you had argued it that way before too I'm curious what your argument is now about the uninjured plaintiffs does it only go to predominance or is it a is it simply a showstopper and you can't certify a class with uninjured plaintiffs? It's both it's both but if you think about it if there's no common questions properly phrased under Rule 23a you don't even get to this problem. If there's no predominance analysis properly applied you don't even reach the standing issue but it's a showstopper on both levels one is you can't certify a class composed of people who don't have injury in fact caused by the alleged defects at issue. Is that a justiciability question or is that a Rule 23 question? It's both it's both because in some cases you could identify like in TransUnion for example. In answering the question do we have to get to that issue? Well I was wondering if you were to ask that question because it's coming over this morning I thought the answer that I think is Justice Brandeis's opinion and Ashwander you address questions of constitutionality or Article 3 standing under the seven principles if there's no other way to get there so if you agree with us then under Rule 23a the common question was not properly analyzed and so the class can't be certified because it was a 23a violation. I'm sorry to interrupt you but just tell me what I was what I'll just react to what I was thinking the way I was thinking about it was as long as the representatives that the named individuals have standing you do have to deal with that first. You do have to deal with that. Assuming you've got that then you can at that point you've got a lot of flexibility and you could decide to deal with the case on Rule 23 grounds. Correct. You could you could decide this is not a proper class action or Rule 23a or 23b3 and we don't need to get to Article 3 standing. But the named the named plaintiffs have standing. The named plaintiffs of each alleged and the named plaintiffs of each claim that they have standing. Now it turns out we would argue that eight of them do not because they were warranty repairs worked and three of them their own expert could not find a problem with their transmission but that's a fact question for the district court but you are correct that in terms of the typical standing argument where right out of the box it's a threshold question is there standing for the case to exist at all. There is standing. There are people here who claim that they have a defect. They have transmission problems. They claim that they haven't been repaired etc. And you're presenting it as obviously tilted towards your side which is totally understandable for an advocate. But did not the district judge in his opinion, Judge Lawson, indicated that the plaintiffs expert McVeigh opined that due to the defective design the problems with the shift and shutter would be expected to occur inevitably in all class vehicles sold. That doesn't answer the standing problem under Clapper or under TransUnion or under the Murphy case. Clapper says it must be imminent, must be imminent. Not that it can happen ten years from now. And McVeigh, by the way, he may have given that opinion but the contrary evidence shows that the warranty data doesn't support it. That's a fact question. The district judge in thinking about this case said that there are common questions and A2 is satisfied and those common questions predominate and so B3 is satisfied. And what you're trying to do is to pick off a few people here or there. But when you have the district court not only citing McVeigh but also citing another expert, Alice Wachs, who said that within a ten-year period one would expect that all of your vehicles of this type would have the defect and that the people who had bought these vehicles would have a economic effect that people would not want to buy their vehicles if they knew that there was such a defect. And so there would be an economic effect class-wide. Yes, that was analysis of the defendant's evidence without doing any rigorous analysis of the defendant's evidence. So take Wachs. Wachs didn't say 100%. She said between 61% and 100%, which leaves a sizable number of people who will not be impacted. Secondly, she talked over a ten-year period. The benefit of the bargain here wasn't for a defect-free vehicle. The benefit of the bargain here was for a vehicle with a warranty and the warranty was limited and it covered the transmission for seven years or a mileage of 70,000 or 50,000 miles depending upon the vehicle. So the notion that a defect can manifest, which by the way, Wachs doesn't take into account causation differences. She doesn't take into account how to count. She double counts. So if one car is a shutter and one car is a shift problem, she counts it twice and the warranty data doesn't address it because the warranty data shows she's wrong. Plus, the biggest single alleged defect was a shutter. Shutter was fixed in December of 18, plaintiffs didn't admit that. It matters if the defect was more egregious. So it helps with my thinking to think of hypotheticals. What if there was a 1% chance over the life of the car that it would blow up and kill everybody inside? So most people would not experience this but there was a 1% chance you might die if you drive the car. Would you think that there would be standing to sue over the purchase of that car? Well, first of all, if there's a 1% chance of blowing up and killing someone, it would be recalled by NHTSA. So that hypothetical could not exist. Well, I'm just asking about Article 3 injury. Okay, so it couldn't exist. Article 3 injury is, you're saying the fact that the defect has not manifested itself eliminates any injury in the purchase of the car. My response is, well, what if the defect has the potential risk that is much greater? Do you think Article 3 standing would exist there? And answer that question, and if you do think it would exist, why is it different from this case? Well, it's not my answer. It's what the Supreme Court has said. Clapper says it must be certain and imminent. TransUnion says you do not recognize standing for a risk. So in Trans... Why in his hypothetical is it immediate that the thing you bought is worth a whole lot less? That car, if it was $20,000, is now worth $3,000. But the hypothetical doesn't exist in real life because of the... No, no, no. That's not an answer to the Article 3 point. All of this is showing me why Judge D'Albandian's first question about your under-emphasizing this in your briefs had some wisdom to it, and you should go to commonality and predominance as fast as you can. I was trying to. But I'm just thinking... The reality, though, is the Supreme Court has said, so take TransUnion. It found a violation, a statutory violation for the 6,486 people, I think it was, in the reports. But it found that there was a risk going forward. I don't know what the... But as of now, you concede that some of the named plaintiffs have standing. Correct. And so why under SOSNA isn't that enough? And then you add in Judge Murphy's hypothetical, it seems like at least the named plaintiffs satisfy that. We're not challenging the named plaintiffs' standing. But then why under SOSNA, why under the Supreme Court's case in SOSNA, why isn't that enough? My answer would be United States versus Texas, 2023, 7-1 decision, says mere monetary injury is not enough. It must be legally cognizable and historically tied. What is the historical basis for awarding damages to vehicles that perform exactly as you anticipated and expected? You're saying under Judge Murphy's hypothetical, there's not a legally cognizable injury? To go back to Judge Sutton's point, if it's worth $20,000 when you buy it, but as soon as that's discovered, they're all now worth $3,000. If they're all worthless, then there's a legally cognizable injury. I want to ask you, this two defect thing that you've really emphasized, which I think is really important, and I want to ask the other side, because they've cited one case, and that case doesn't help them. I'm really curious what has happened with two defect cases. I'm curious, I think you're treating it as a commonality point, and it's not obvious to me the two defect problem is a commonality problem as much as a predominance problem, because I can't imagine there are two defects, and whatever the part is will say the transmission, and you really could show in one fell swoop, yes or no, as to each one. The common questions can be plural, and so what it seems to me to really illustrate is what a huge predominance problem there is. I'm afraid I'm missing something on common question, though. What am I missing, and why it's a common question problem? Well, it's the opinion that Your Honor, I think, wrote in Nissan, where the common question phrased by Judge Lawson-Below was, could a reasonable jury find there's a common defect? Not, as it should be, could a reasonable jury find only yes or no for all people based upon the same common evidence. That's what the question should be, and here, because there's two different defects, and there's multiple causation, and the one defect has been fixed, and GM's knowledge has changed over time, how is it possible that there can be a common question with a common answer? Was the defect fixed after the end of the class period? No. When compared to the end of the class period? Depends upon the expiration of the warranty, but if you have a 19, the defect was fixed in December of 18, so if you have a seven-year warranty, that's the math. So there are vehicles, and they decline over time, obviously, with the expiration of the warranty, but there are vehicles that at the time this lawsuit was filed, and as of the time Judge Lawson made his decision, were still under warranty. And indeed, some of the named plaintiffs in this case took their vehicles in, had the shutter fixed, and have had no problems since. So yes, they had standing to bring the case, to claim the injury, but what is the injury? They got the benefit of their bargain. The benefit of their bargain wasn't a defect-free vehicle where no problems would ever become extant. It was a vehicle with a limited warranty that was honored by General Motors. I'm struggling with the whole concept of what is the defect, because I'm thinking of the Whirlpool case, which I noticed was not mentioned at all in your briefing, and seems to me to be quite parallel in that it was washing machines across 21 different models, two different platforms built over numerous years. And I'm looking at the issue, because what Whirlpool held was that if defective design is ultimately proved, all class members have experienced injury as a result of the decreased value of the product purchased. Isn't that what we have? No. Well, Whirlpool didn't say they had two different defects. They didn't say they solved one under warranty, and it was under Ohio law. The issue of standing wasn't raised. The issue of the manifest defect rule wasn't raised, because Ohio didn't have a manifest defect rule. So it's a distinguishable case. But Whirlpool... It's a distinguishable case on whether there is a cause of action for loss in value of a product that you purchased. Let's say you purchased it and you paid the asking price for it. And then information comes out. I know there's some evidence in the record that GM did not allow that information to come out, but some of it did. And so now you want to sell your truck. Everyone knows that your truck has a transmission problem, which is what the transmission problem that manifested in two different ways and where it's actually upgraded in two different ways. So were the washing machines in Whirlpool. Well, first, plaintiffs have admitted there are two different defects, not a single defect with two symptoms. That was their original theory, but they've admitted two different defects. Second... Two different harms? Two different defects. Defects to the transmission system. Yes, one deals with the automatic transmission fluid, moisture issue creating friction. The other defect deals with a purge problem. They call it a purge problem. Not an engineer, but that's what they call it, a purge problem. But both of them related clearly to the transmission. Sure, along with eight other... The district court found that that was one, that the overarching issue was a transmission problem that had to be fixed in different ways, just like the washing machines had to be fixed in many different ways. I don't see Whirlpool being factually similar. The washing machines allegedly had a mold problem caused by a singular issue, which was the tubing, as I understand it, according to the opinions. This is a sophisticated vehicle, and the one issue, shutter, was automatic transmission fluid, where GM's knowledge changed over time, and the other was a GM made changes over time that mitigated the risk, that reduced the number of instances. So it's not just they fixed it. They made changes over time to each model year that fixed it, and the results were... Perhaps I'm remembering the record wrong. I thought that the ultimate fix was not put into effect until the time period after the close of the class in this case. That was a different model subsequent, but the point is they made fixes all the way along that improved and reduced the warranty claims rate. And so did Whirlpool. They changed the inside of the machine. They created tablets that would take care of it. They had 21 different models, and they had a lot of different ways to fix them. I'm still struggling to see why that is not comparable, because what it ultimately decided was there is one overarching defect. That seems to me to misdefine common questions. The common question can be elevated to the degree that says that someone buy a GM car. Oh, is there a transmission issue? Set aside the eight different causes of shutter. Set aside the ten different causes of harsh shift. Set aside the two defects here where one was solved and the warranties were honored, and that the other one had improvements made repeatedly over time. They're all transmission issues. If that were what a common question is, then there's no case that doesn't have a common question if there's ever an engineering issue of any sort. Counsel, I think I'm confused about the fix thing, and it may be my problem, but I thought the district court grappled with this evidence and explained that the Mod 1A and Gen 2 were not deployed during the class period. Am I wrong? Was the district court wrong? It's phrasing. District courts, what do you mean by deployed? If you have a 2019 vehicle and you have a shutter problem, you go out for warranty repair in 2020, you get it fixed under warranty. But he's correct, the district court is correct that it wasn't fully implemented until March 2019. So no one went back and said to a 2016 vehicle, for example, bring it on in and I'll give you the Mod A1. But we start with going back to your overpayment theory and Judge Stranch. The record here from Dr. Hitt is that he analyzed the market data and there was no negative impact on resale value. None. He did something that Mr. Eichmann . . . I think perhaps the issue to me is that we are looking at whether the district court, in fact, did a rigorous analysis. Long opinion, 33 page appendix explaining by state how it functioned. Our review is not to substitute our judgment and agree with you that perhaps your expert was better than their expert. Agreed. Our job is to say, did this district judge perform a rigorous analysis and identify common questions and if that occurred, then the issues that you want to take up are issues that fall in the case in chief and can be addressed as the Whirlpool case said, can be addressed at summary judgment and trial. Three answers. One, there was no rigorous analysis of the counter evidence. I'm going to give you some examples. Five plaintiffs, named plaintiffs, declined transmission repairs in this case because they wanted to maintain their status as named plaintiffs. All right? Three of them, he could find no transmissions issues. You'll find none of these facts in appendix B. You'll have the plaintiff's rendition and not a single one of these facts. You have your own expert with three named plaintiffs, can't find a problem. Then you find four named ... You're not comparing expert testimony. No. You're not asking us to compare what the district court did to what you think was the better evidence. No. This is their evidence. This is plaintiff's evidence. It's just that the district court didn't rigorously analyze it. It begs the question, is it ... Could the district court ... Could the district court ... No, sorry. Could a reasonable jury find yes or no? Or must, based upon the common evidence, a reasonable jury find yes or no? He asked could, not must. In some ways you're confusing the question of standing of individual named plaintiffs, and you're picking apart some of their particulars, with what the district judge said were three readily discernible common questions. One of them, which we have not talked about, one of the common questions, the three common questions, was whether the defendant, i.e. General Motors, knew about the defects and concealed its knowledge from the buyers of class models. That's one common question that we haven't yet discussed. The third one, whether the information withheld would have been material to a reasonable car buyer. Although you're pointing out that you were making changes as time went on to some of these aspects of the defects in the transmission, some of these changes didn't accomplish anything in terms of making the problem better. The question really comes down to whether there is, in fact, a basis in the district court's opinion for saying that these three questions, the first one being whether this transmission, the 8L45 and 8L90 design, has one or more defects that render the vehicles unsuitable for ordinary transportation. In some ways it seems almost counterintuitive that you would be arguing this is a good way to have all your transmission problems evaporate by having them dealt with in one class action. I've been doing class action work since June 1, 1979. I've yet to meet a client on the defense side that said, oh, let's transform a million dollar case into a multi-billion dollar case. There's a lot of money involved in this case. Yes. There's a lot of money involved for people who have had no injury. They've had their vehicles for nine and ten years or seven or eight years and they are driving exactly as they anticipated. So let's go to the common question. Could a reasonable jury find, based upon common evidence, only find yes or no and find a defect? Close to 90 percent have had no warranty claims when you add them all up, although WAC says it's going to be 100 percent. You've got two different alleged defects. You have eight causes of shudder. You have ten different causes of harsh shift, not accounted for, not discussed. Was there evidence that in one year for one model, 50 percent warranty claims? Yes, and warranty claims were honored. There was also evidence in one year for another model. Let's suggest that there was a problem if there were 50 percent warranty claims. You have 40 different models and makes, and they changed over time. But they used the same transmission, am I right? Either the 8L45 or the 8L90? You're not correct because they had hardware and software changes over time. But did they have the 8L45 or the 8L90? Yes, they had that. That's the definition of the class, right? I mean, like, you're trying to take it from the definition of the class. As I understand Ford and Nissan, the opinions of this court, one has to look at changes over time. The fact that a model in 2016 may have a transmission problem doesn't mean that anything for a model with different computer software, different configurations, different technical safety, different technical service bulletins has the same problem three years later. And you see this with warranty rates declining. Yeah, my experience is that defendants don't often opt in to class actions as well. I actually think the opposite problem, which is you should have a bunch of arguments about why commonality is not met, predominance is not met, and that's what I see here. That's the question I have. You have a lot of reasons to say why predominance isn't satisfied here. Courts typically don't honor all of those, but I want to know what you think your best ones are. I wrote down the two defects, the manifest defect rule, which a number of states, including some large states, seem to have, and then these arbitration agreements, which seem to be pretty widespread and create some legal questions. Those were the three things that at least caught my eye with respect to predominance. Are those the top three in your mind? There's one other. Sorry? There's one other. The district court knew it had a problem. The district court actually, you know, didn't decide these issues. It can cull them later. Issue after issue of material significance to the class action is going to be culled later, which is banned by the 2003 amendments. We eliminated, not me, but y'all eliminated. Does that relate to predominance? I'm sorry. It relates to predominance. Why? Explain that. Because what was happening in conditional certification was courts were routinely certifying, particularly in the late 80s and 90s, routinely certifying and saying, we'll deal with these issues on the differences in facts and whether there's individual issues predominant. We'll deal with that later. We'll redefine the class. It's just conditional. We can fix it later on. The 2003 amendments said, no, you've got to decide now. Comcast said, no, you have to decide now. Remind me, anyway, the language of the amendment. Just got rid of conditional certification. Because I still see in a lot of cases this concept that you can narrow later and cull later.  So let's take the manifest defect rule. I'm glad, Judge Rader, you raised it. Plaintiffs say, well, we just have to look at the warranty records. That will tell us who's in or who's out. Well, there's a problem with that because the warranty records show that there may or may not have been a claim for shudder or hardship, but they don't tell you the cause. So who decides? When do they decide? They suggest after the case is all over. So we have a false presentation to the jury. So take Texas. 111,392 absent class members in Texas, to be precise. The vast majority never made a warranty claim. What are they doing in the case? So maybe the plaintiffs will say, well, just get rid of those who have not made a claim now. Just get rid of them. Okay, the ones who made a claim. What was the cause? Was it the automatic transmission fluid? Or was it one of the other eight causes? Haven't a lot of courts certified without, I know you bring the causation issue up, but haven't courts certified without getting to the causation issue? Not, it's not like this. Not where you have multiple causes. You've looked at the 11th Circuit case, right, Turchikovic? Turchikovic, yes. Yeah, Judge Newsom remanded, I mean, he went through a very similar analysis that you're asking us to go through, and then he said there's a few states where manifest defect laws don't exist, so he remanded for those. Why not follow that approach? Because at the beginning you said just kill it all together. Well, there's other issues, too. So let me bucket the three. There's another issue, Judge Redlew, that I should mention as well, reliance and causation. Okay, that's a big issue as well. Right, but that's what I was getting at. There are cases that. Right, but so here's the data. Over 40% of the absent class members are covered by the arbitration issue. Okay, so you say you've got 60% less. Well, you didn't raise the arbitration issue. Well, we did. In a timely way. That's what the district court and what. Right, and we disagree with that because. So, I mean, you can blithely say get rid of all the cases that should have gone to arbitration. First of all, you were not a party to the arbitration agreement. It was the dealers who had them, correct? Correct, but under the equitable stop or other doctrines under state law, we're entitled to enforce them, and we have. But this is typical of your approach, which is you say, well, we'll get rid of the manifest defect cases. We'll get rid of this. We'll get rid of the arbitration. And then, you know, you say there's nothing. Well, the issue is, is phrased by this court in Terrify and in Ford. You look at the common questions, then you look at the individual questions and determine which one predominate. We don't think that there's any common questions. That's our threshold position. But then if you look at the individual questions, manifest defect rule, 62.1% of all absent class members are covered by that. Reliance and causation, 88% of all class members are covered by that. Arbitration, over 40% are all covered by that. I don't know that anyone's ever done a statistical analysis of what makes predominance in terms of an individual sense. When you're talking 88%, 62%, and 40%, and they're not all identical, it strikes me that the burden of proof, which is on the plaintiff to prove predominance and that predominance overwhelms the common questions, is not met. And the proof of the pudding, though, kind of a big one on that old phrase, proof of the pudding. It's a judge-friendly phrase. Judge Lawson recognized it. His calling isn't an answer to the problem. It's a confession of the problem. You know, Comcast has this great line. And Comcast says at page 34, 569 U.S. 34, by refusing to entertain arguments against the Respondent's Damages Model that bore on the propriety of class certification simply because those arguments could also be pertinent to the merits determination, the Court of Appeals ran afoul of our pressness requiring precisely that inquiry. By calling something the merits or by saying we can call it out and deal with it later, Judge Lawson didn't solve the problem. He confirmed the problem. If predominance exists, what's to decide later? That's for a jury to decide, not for the court. I couldn't agree more that a lot of sins have occurred with those two phrases. This may be a follow-up to Judge Lepar's question. I'm just trying to figure out what the right way to do it is. Would the right way to have done it, let's take reliance, is to find ten states that don't have reliance on that cause of action and then say, well, we don't have to worry about that big predominance problem, and then that would have been the right answer, to certify those ten states and do a predominance inquiry as to that and then go to the next cause of action? I'm just trying to figure out, because I get the sin point. I'm afraid everyone in this court has done this once. We're pretty guilty on this, but I'm trying to figure out what the right answer is. Is that the right answer? Well, I think this Court's already spoken to the right answer, and Ford, Nissan, terrifying the other cases. A rigorous analysis of... Just go back to what I just said. So what I said, I imagine a cause of action where reliance could be really important, but hypothetically ten states don't require reliance. So that solves that looming predominance problem. For those ten states. Exactly. So is the district court judge the right way to go at that is to say, we're certifying the classes to these ten states because they don't have reliance issues, that solves the predominance problem, and we're not going to certify as to the other 16. Would that have... I'm not asking you to waive other arguments, but would that have been the right way to think about it? No, if reliance were the only issue, and you didn't have manifest defect really, didn't have causation, et cetera, et cetera, then you'd say reliance is a common question, if that were the only issue. But here, so take Illinois. That's where I hail from. I don't know that you understood my question. I'm imagining ten states that don't have reliance, they don't require reliance. I agree with that. Okay, okay, you did understand. And I understand it. And if that's the only issue, if that's the only predominance issue, reliance or no reliance, and those states don't require it, and the plaintiffs have common proof, then you're going to certify it. Here, though, you don't have that. And you don't say do it later. Right, and you don't say do it later. So take Texas. Does it have reliance? We say it does. Set that aside. Let's say it didn't. You've got the manifest defect rule in Texas. They're out anyway. Alabama, same thing. Take Illinois. Illinois has five cases on point. There's a reason these cases about auto defects are no longer brought in Illinois, at least not that I've seen for a long time. The Illinois Supreme Court in Alavera in 2002 changed Illinois law fundamentally. It's not called reliance. It's called causation. If you didn't see it, you didn't know about it, you didn't consider it, it didn't cause. You have no cause of action. Avery, et cetera. Go ahead. See if there are a few more questions, then you'll get your rebuttal. Okay, thank you. The district court went through each of the states and its legal issues, correct? Correct. The district court did attempt to do a rigorous analysis, and the panel opinion also went through the different claims and went through each case, each state, state by state on that. We might have a difference of opinion as to what Illinois law requires, but this was done by the district court and by the panel and an evaluation of each state. The district court, in the first instance, and then the panel opinion, cited cases. So the district court took Illinois from where I come from. It cited a central district of California interpretation of Illinois law, and it cited a district of Massachusetts interpretation of Illinois law. It did not cite the three controlling Illinois Supreme Court decisions or the two controlling Senate circuit decisions. Right, and you pointed that out, and then the panel went through the different states and did its analysis of the different states' statutes and case law, and obviously the Sanbon court now can do each state carefully. Correct. Looking at the statutes and the case law on these various things, but this was done both at the district court level and at the panel level, and you have a fundamental disagreement with the capabilities of an analysis of the judges that signed on to those opinions. Oh, I wouldn't say that. I would say we just... Well, you clearly are, but... Well, I would phrase it this way. The Nissan panel disagrees, citing the third Illinois Supreme Court case, with the RICOS panel. That's above my pay grade, but it is... And the RICOS panel, just because it is relevant, the RICOS panel preceded the Nissan panel in a published opinion, correct? That is correct. So if we were looking at this as a law of the circuit prior to an en banc, the RICOS panel would be binding unless the law had changed. Now we're sitting en banc, and we are bound by Supreme Court cases, and this court needs to do what it thinks is the right thing in the class action context, and obviously that remains to be seen. They said it's above my pay grade, Your Honor. Are there any other questions for now? I think we'll thank you very much, and you'll get your full rebuttal. Thank you so much. All right, Mr. Mack. Thank you. Good afternoon. May it please the Court. Thank you, Judge Sutton. Douglas McNamara on behalf of the appellees and class members. If I could start, first of all, I thank you all for these great questions. Obviously this court has spent a lot of time thinking about these issues and these questions, and I'm here to help. Let me first, by correcting a few things my colleagues say, I think on the third chance he got it right, to answer your question, the class begins from 2015 model year to March 1, 2019 is the end of that model year. That is specifically the end of the class period because after that date, that's the break point where the defect related to the ATF has been corrected. Every vehicle that GM made that had an 8L45 and an 8L90 has the bad ATF in it, the one that GM did not sufficiently investigate that causes shutter over time and exposure to moisture. I know this because GM told me, because GM has a technical service bulletin. You can find it at 204-5, page ID 11657. This one's dated August of 2019. It covers any changes that they learned with new information, all seven segments, all 40 miles, models. Every single one of those vehicles is on the same TSB, same technical service bulletin. Every single one gets the same fix, whether it's a Corvette, whether it's a Camaro, whether it's a Silverado. It's the same code. Can I ask why you didn't bring different class actions for each defect? So Sears, the case you rely on for this point, it's the only case I've seen. So if you've got some other cases, I'd love to see them. But that's actually one where Judge Posner talked about two separately. So I don't understand how it supported the point in your brief. But my broader point is not to quibble. It's just two defects does seem like a complicator when it comes to predominance. I'm just trying to think through how courts have dealt with that. I appreciate the question. I don't have another case on that because this case is unique in that there is another TSB which has the exact same models. All those same models, but the other defect, the defect of the harsh shifts, this one doesn't have a fix to it. But it's all the same models, all the same segments, whatever changes were made over the years. They're all in the same TSB. This one is in the record. You can see it at 177-6, page ID 7333. It's a complete overlap. It's the same class members. It's the same witnesses. It's the same documents. It was the same warranty surveillance done by the same people at GM. They were seeing both of these problems in real time at the same time. We would be calling the same people to do two different trials if we tried to separate them. That said, there is a separate case. After the 2019 models, for anyone who has a post-2019 model that doesn't have the ATF, there's a case called Battle vs. General Motors sitting in front of Judge Goldsmith right now. It's only the second defect. So we could have tried to separate it out, but it didn't make any sense really from an efficacy or efficiency standpoint. But also there's a damages issue related to. There's a diminished value that the market found because these cars have these 8L transmissions which are problematic. And when our expert did the diminished value analysis, he found that the resale value of these vehicles was worth about $1,300 less. The market doesn't know nor really care if it's because of an ATF or if it's because of a valve issue. They just know these cars have got problems and I don't want them. So it would be very difficult in the first case to separate the two out. Not impossible, very difficult. And that's why we brought them together. But with a lot of thought went into that decision, it just made sense and it's going to be the same people getting the same notice for that. Now, Mr. Godfrey is correct that they do have a fix. There is a wonderful fix which was replace the defective ATF. It works 99.5% of the time. It's probably not the tires then. It is the bad ATF that fails over time. So when he is talking about its 8 different causes, well, 99.5% of the time it's the ATF. So is there really a need to do separate trials to figure this one out? We do not think there is. And under the case law that this court has for due process or other cases this court has done, for example, Lingus v. Crudan, which was a TCPA case, this court saw no reason to do anything beyond affidavits from people saying, I didn't sign up for that service. You don't really need to have Dennis Spearley come in to say, I had a problem, my vehicle shook, they gave me the ATF fix, it still shakes. Okay, it didn't work in your case, but that doesn't mean that you're not injured. And the other two plaintiffs that Mr. Godfrey mentioned, Dr. McVeigh did find that they didn't have the shutter after they got the fix. Can I ask you about predominance? Please. Because what I'm struggling with is that the 62% that have manifest defect laws, I mean, in those cases, why don't individualized issues predominate? Great question. It's a wrong math, though. It's selective. He took 62% to try to say sales, but actually below, the defendant only raised six states that had a manifest defect rule, and here they enlarged it. But here is why it doesn't matter. The injury here, and Judge Sutton's questions got to it, as did Judge Murphy's, is one of a defective car. People do not want to buy a car with a defect. I agree with you for standing purposes, but what I'm trying to do, I'm not smart enough to put it all together in a blender and figure it out, separate them out. Okay. So leave standing aside and just talk about predominance. Okay. Let me talk about predominance, and let me just talk about the states that do arguably still have a manifest defect rule as it relates to UCC. Just use New York and Tennessee, which have manifest defect reliance and causation. Great example. All right. So let's start with that. What the court did here is very consistent with the Daffin decision, was if there is a chance that manifest defect is the state law rule, we'll decide that later. It's not important. And the reason why it's really not important is because the injury is not, because there's other claims to these states, it's not just a warranty claim. How can you certify that state's class if you have to show a manifest defect with your car? As I understand it, that would be very individualized. So there's states, not all state law claims have the same requirement. Pennsylvania is one, for example. Right. I'm using New York and Tennessee. Okay. All right. But some of them, it depends on claim as well, if it's a warranty claim as opposed to a consumer fraud. What GM has done in this case, because they had these two problems going on, is they created a set of warranty codes to look at. This is what they used. It's in the record at 201-14, page ID 10996. It is all the codes that their own warranty surveillance team used to track these two issues. This is what they made $150 million redesign changes on. This is what they used to assess whether or not they have to tell everyone about these defects. What Judge Lawson decided is, look, based upon the service records, a claims administrator can look at this after the fact, and if a state requires it, if a New Yorker comes in, Mr. McQuaid says, I have my vehicle here, and the jury says, you're right, there's common issues, there's common damages, let's see if you actually presented your car in for repair, and you have one of the defects, and they would then just do a Control-F search of the warranty database with one of these codes. Now, the other option of handling this, which this court looked at in Jefferson, which is a front-loading of it, where the class definition was specific to all those folks from Tennessee who had this transmission defect, presented it, and got this repair. And this court on 23F denied that petition and said that that class definition addressed the concerns of a manifest defect. Yours wasn't that narrow, right? No, we didn't. We didn't need to. We didn't believe we need to, but if this court on remand says for states that have found a manifest defect is required, if you have to front-load it and change the class definition to limit it to that, we can do that. The only downside I foresee with that is, as time goes on, this is linear, these defects, you're going to have more people in the class that have the defect, and then you're going to have a chasing the notice situation once the trial happens. And Judge Sutton, you sort of asked about it as well. Dr. Wax found this is going to 100% for most of the models over a 10-year lifespan. My colleague mentioned that, well, your anticipation is only for the warranty period. I don't know if any of you bought a car and said, I only expect this car to last for five years or 60,000 miles. That's not how the normal consumer approaches a purchase of a vehicle. GM's definition of useful life is 10 years or 120,000 miles. That's what they do, and that's what they base their warranty strategy on. Can I switch back to commonality? I was curious, are there cases on knowledge and commonality? I can understand, like in a securities case, if there was a false statement, you know the false statement. The problem I have with knowledge and commonality is knowledge can change over time. So we have a class period that's four years. What happens if there's a smoking gun evidence in 2017 alerting GM of their knowledge? How can that evidence be used in the fraud claims for people who bought their cars in 2015? Because it was before GM got this information. That's an excellent question. This also is a question that was raised in GM's reply about, well, knowledge changes over time. You can't possibly have the class, and then if the jury comes back and says 2017, redo the class definition. How could you do that? And the answer is, because of 23C1C, which still exists. The rule change in 03 took out the conditional certification language, but it still permits the court to redefine the class based upon evidence. In fact, the— How is that even—because knowledge can change on a daily basis. Are you going to have—it seems, at least as the class is defined today, it seems quite inconceivable to me to say that knowledge is a common question because I understand common question to be yes or no for the entire class. And your response is, well, you might say it's not yes or no for the entire class, but we can fix that later. But it seems to me that was a concession that it's not—you haven't proved that there is a common answer. Well, that it wasn't meant to be a concession. We believe there's overwhelming evidence that GM, as early as 2013, knew that they had these— So even if there was, it still seems to me that there's a Seventh Amendment problem. Like if you say we're only going to rely on 2013 evidence, you are harming class members in 2018 if there was smoking gun 2017 evidence because you are intentionally refusing to use that evidence in order to make a common question. And that strikes me as quite problematic. That's a great question. Let me do it in two parts. The first part of it is, yes, knowledge is going to expand over time. Certainly the day before GM did the 2019 TSP, they had perfect knowledge of what would fix the problem. It's always going to change over time. We would ask the jury, tell us when GM in the consumer fraud claims knew of the problem. Did they know of the problem and when? So we'd ask them to isolate it and then consistent with 23C1, as it notes— But why shouldn't the rule be that it's frozen at the initial beginning of a class? No. A determination of liability after certification may show a need to amend the class definition. This is right from the note for 23C1C. De-certification may be warranted as well. The court, at the end of the evidence, can change the class period and the people who bought, say, from 2014 or 2015, they're out of luck. I mean, every time you face a difficult chess piece on the board, you take it off. I mean, I realize both sides do this. I'm not saying just your side, but it seems so strange to say culling solves every problem. I mean, I would have thought rigorous analysis requires you at the outset, yes, I can do knowledge as to the whole four years, the whole transmission, both effects, same evidence, no change in the evidence, one yes or no answer. And if you can't, then at the outset you've got to redefine the class. It doesn't seem like rigorous analysis to me to say the district court, every time they get to a tough spot, can say, we'll see how the evidence comes in. So, again, believe there's overwhelming evidence. I believe Judge Lawson called it irrefutable evidence of GM's knowledge of the defects. No, that's my point. You should have just frozen the answer to Judge Murphy's question should be you have to freeze knowledge at 2015. If you want the class to be 15 to 19, make knowledge whatever GM knew in 15. End of story. I understand. And that's your choice. And if you want to use the later stuff, as you do, you're stuck with that problem on predominance or common question. Well, I believe the way the rule is written. We're not frozen. And also I don't believe there's a Seventh Amendment issue because every class member is going to get a notice if this class is affirmed, and that notice is going to say, do you want Mr. McNamara and his group of plucky do-gooders to sue on your behalf? If so, and you bought it in 2018 when, boy, did they have great evidence of overwhelming evidence of knowledge, where they were meeting every week and they're saying this fixed it work, you're running the risk. You're not going to be able to get as good of a decision. If you're a 2015 person who got towed and your car completely failed because of, or you got in an accident because of the harsh shift, you're not going to be able to go forward with your own claim. You're opting in to this clase. You're not opting out, I should say. You're opting out. You're waiving your Seventh Amendment right, which you're allowed to do. It's a voluntary knowing waiver when you get that notice in the mail. Don't you think there's a conflict, though? I mean, consumers aren't this sophisticated. So the later consumers, if you're not going to use good evidence, aren't – it just seems to me there's an inherent conflict between the idea of wanting to get certification and the idea of showing that there is a common question and this inherent change over time. Because it's going to harm some of the class members if you can't use good evidence. Agreed. But your point, I guess, in response to Chief Judge Sutton's is you are going to use it and somehow you're going to cull later. So that's why there's no conflict. Absolutely. Because also this is the evidence we're talking about. Boy, look at all the knowledge as it accumulates. It also goes to materiality. It also goes to the scope of the problem. It's relevant not just to exactly when they knew but how big the problem was. As it got bigger and bigger and the warranty gets to $131 million or $121 million, it's still going to come in. Before I forget, I wanted to address something that you asked and also Judge Tupar asked about Tereshkovic, which I think is a pretty good template for this court if it's really troubled by how the district court handled the issues of reliance and manifest defect. If this court thinks what the corporal did not do was enough and wants to roll up its sleeves and decide, does Illinois have a reliance requirement or not? We don't believe so for the reasons we stated. Then the answer shouldn't be let's send it all back and start anew. We'll see you again in a year, Doug, when you're older, balder, and fatter making the same arguments. Instead, you just make the decision. You send back the parts of it and affirm for the states they don't address, states that don't have a reliance requirement, states that don't have a manifest defect, and you let them go forward. What happened at the end of Tereshkovic when the case got back there is they went to trial, and it's over. It's settled. It's done. Florida, which is one of the states Tereshkovic mentioned, is an easy one. So is Washington. So is New York as to reliance. There are several states which there are no reliance requirements written in it or there's a causation requirement. There are several states that this court has handled in RICOS, such as Illinois, such as New Hampshire, that this court could put on one side of the ledger and we could go back and get answers. This case has been going on since 2019. There is no one left in warranty. Everyone is out of warranty now. The fix that GM developed they never told anyone about. They didn't send a letter. You only know about it if you magically showed up and said the word shutter, and then they might cover you under warranty if you were. The other problem, they have no fix for it. It was 2023, they did a redesign. We're the only folks left who could do something for these people. So if this court is considering sort of what the court did in Tereshkovic, we'd ask that you follow that path so we could at least get some opportunity for our clients. And I know I'm over time, but I would love to address the question that Judge Riedler asked about arbitration, if it's okay. It was me. So two things. I think we explained, and Judge Morrison, there's a waiver. It's too late. They never raised it. No, it's not. You're saying that they had to challenge whether the class had valid arbitration agreements during the non-class period? We're saying if they have an affirmative defense as to absent class member arbitration, they should have put that as per Rule 8c in their answer. They did do that, but in 2022. They didn't do it in 2019. They waited three years. They never sought any discovery on this. They know they're dealers. This is 4014 GMT. I'm not sure why you have to raise class arguments before the class proceedings actually begin. As opposed to the threshold case where you have named plaintiffs and there's some motion practice and things like that. The case they rely on, Gutierrez, actually did apply a waiver analysis, and it did ask that very question. Did you preserve this before you moved to defense? They also could waive it as the named plaintiffs but not waive it as the class. That's true, but in Gutierrez, they did preserve it as to absent class members because Wells Fargo knew very well the absent class members had signed arbitration agreements unlike here. So Wells Fargo did everything they could to preserve that defense. They put it in their answer. They raised it at scheduling conferences. They said we want to go forward on it, and in a non-class case, which is what Gutierrez was, the 11th Circuit said you preserved it. They didn't throw out the class. They just said you preserved it, and now you guys could go forward with your absent class members. Here, the problem they have is not only is it just too late, it's just too little, and the answer my colleague gave about equitable stoppel, and they put this in their supplemental answer, is a little problematic. First, they say we rely on dealer agreements, and they cite this in the supplemental reply, and they have a cite to R-16-929. That's not the active complaint. That was one of the first complaints filed. It's obsolete. It got replaced by several complaints after that. The active complaint, the operative complaint, which you could find at R-41, is clear as day. We have never cited to a dealer agreement. We have never cited to a dealer warranty. This is not a situation where we're trying to rely on part of one agreement and ignore another. We have never sued a dealer. They're not part of this. The other infirmity in their citation is they rely on a case called Javich. Now, this might sound familiar to some because Javich was a 2003 case that talked about this idea of equitable stoppel, but Javich relied on Arnold in a 1990 case by this court, which is no longer a good law, and if you looked at the Articure decision, F-4 at 524, it even notes Arnold's been abdicated because it had a form of equitable stoppel which was federalized, dice-loading, to make it easier to get arbitration because of a sense that arbitration was favored. But as a matter of state law, as a matter of state law, the equitable stoppel arguments have failed repeatedly for GM, including in this case the one-name plaintiffs, two-name plaintiffs. They did move to arbitration on compel arbitration. They did it without any discovery. They immediately moved to compel, and they lost. They lost Mr. Ulrich, who's the only one that's been heard, and they lost because they couldn't show equitable stoppel. So it's just too little, it's too late. It would not address the whole class. It doesn't have anything to do with the issues of predominance that would be presented at trial. Any other questions? Anything else I could help anyone with? Thank you, Mr. McNamara. Thank you very much. Godfrey. Let me start with the two-defect issue raised by Your Honor. Ford is not the only case decided by a court of appeals addressing the two-defect and why you can't have a class. This very issue was foreshadowed by the Bridgestone-Firestone case in 2002 by the Seventh Circuit, where the court said there's three different defects. How can we possibly have predominance with three different defects alleged? That's the same problem we have here, particularly with the evolving knowledge over time. Secondly, on warranty rates, the warranty rates have gone down. They have declined with the changes. That's in the record. And so projections that Wax wants to make by double-counting and assumptions about a singular cause, because she assumed a single defect, they don't address the issue, where the judge has to rigorously analyze the competing evidence. And the question goes back to the common question in predominance, which is going to dominate? Is there a single common answer on a common question? And here we know the answer is no. And when Mr. McNamara says, well, GA has warranty codes, 99.5 percent, wasn't that odd? Four of the named plaintiffs, his own named plaintiffs, had causes unrelated to the two defects when the experts got in there, including their own expert. So the case really comes down to what the district court didn't do, which was decide. As Comcast said, he had to decide. So culling. We'll cull it later. Do I get discovery rights? Can I serve discovery on a selected sample of absent class members in Texas to find out that they have transmission issues unrelated to the two defects at issue? Or that they've turned down the repairs that were offered to them because they want to stay plaintiffs in the case? Do I get discovery for that? Now the solution is we have a jury. Well, which jury? There are 26 separate trials, supposedly. The judge said there's 26 separate cases. So do we have a jury reexamination problem repeatedly on the knowledge question? And also, I'm unfamiliar. I've never seen this before. I've never seen a jury be asked, you decide when General Motors had knowledge and then we'll decide who's in the class. Culling and the refusal to consider issues because they're the merits isn't the answer that confirms the problem. So we have the predominant problem for the manifest defect rule. There are no economic losses if the manifest defect rule applies. They have no claim under state law. So you have the 8th Circuit. You have the 7th Circuit. You have the 5th Circuit and Cole, which have written on this. And it takes out large segments of the class as a matter of law. They have no economic damages as a matter of law. You have the knowledge point, which I think we've already discussed. You have the reliance issue. Some states require reliance. Others do not. But in Illinois, it's not reliance. It is causation, which has elements of reliance, and the controlling authority in Illinois is the Alavera case decided in 2002. You then have the issue of damages. It's in the briefs. But Eichmann said the damages vary by individual, but because he did not actually examine any prices paid by any human being, he assumed MSRP and then did calculations based upon MSRP, which virtually no plaintiffs ever paid. Manufacturers suggested retail prices. So he created a hypothetical price that no one paid versus a but-for hypothetical price that no one paid and found damages on average when he admits that the damages will vary by individual. And that's predominance, even accepting Eichmann's theory, which is not good economics. So when we come down to it, I end where I started. The first flaw is the lack of a common question. It's not could a jury find. It's must a jury find yes or no based upon common evidence. And if the answer is you can't do it, you could find for some and not find for others, that's the end of it. And then you get to predominance. Predominance is not solved by saying I'll deal with that later, I can call it out after the trial, I can have a jury make a decision and then I'll redefine the class. Predominance is decided under Comcast at the time based upon the evidence. And here, unlike many cases where you have, some cases you have just a single issue, just on reliance, yes or no. Or manifest defect rule, yes or no. Here because of the way that they've defined the classes and the way they've framed their case, there are multiple issues. And finally, let me end on the arbitration. I do not understand how waiver can take place when the parties against whom you've waived are not within the court's jurisdiction and they're not parties until the class is certified. If the answer is, well, you should have raised it as affirmative defense, for what end? If the class is denied as an affirmative defense to no one, they're not parties until the point that the class is certified, so to what end? The court has no jurisdiction over them. And so it's an unprecedented decision we submit. We think it conflicts with other cases. But the reality here is that the arbitration clauses were discovered during the course of discovery. They were raised on December the 16th, 2021 with Judge Lawson. This is in the record. General Motors said we want to raise this. He said, yeah, I assume it would be part of the class opposition. And it was raised at the class opposition. I think we've got the point. Okay. Thank you very much. Thank you very much. Thanks to both of you for excellent briefs and terrific arguments. We really appreciate your answering our many questions. It's a complicated case, so thank you. Well, thank you very much for your time. We appreciate it. The case will be submitted and the clerk may adjourn the court.